```
 1                 UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF TEXAS
 2                       AUSTIN DIVISION

 3  UNITED STATES OF AMERICA   ) Docket No. A 12-CR-102(1) SS
                               )             A 12-CR-104(1) SS
 4                             )             A 12-CR-105(4) SS
                               )
 5  vs.                        ) Austin, Texas
                               )
 6  MOHAMMED ALI YASSINE       ) March 28, 2012

 7
                        TRANSCRIPT OF ARRAIGNMENT
 8                BEFORE THE HONORABLE DENNIS G. GREEN

 9

10  APPEARANCES:

11  For the United States:     Mr. Gregg N. Sofer
                               Assistant U.S. Attorney
12                             816 Congress Avenue, Suite 1000
                               Austin, Texas 78701
13

14

15  For the Defendant:         Mr. Stephen M. Orr
                               Orr & Olavson
16                             804 Rio Grande Street
                               Austin, Texas 78701
17

18

19  Transcriber:               Ms. Lily Iva Reznik, RPR, CRR
                               200 West 8th Street
20                             Austin, Texas 78701
                               (512)916-5564
21

22

23

24

25  Proceedings reported by electrical digital sound recording,
    transcript produced by computer.
```

 1                  (Proceedings commence at 1:16 p.m.)
 2                  THE CLERK:  Call 12-CR-102, Defendant 1, U.S.A. vs.
 3     Mohammed Ali Yassine, A 12-CR-104, Defendant 1, United States vs.
 4     Mohammed Ali Yassine, and A 12-CR-105, U.S.A. vs. Mohammed Ali
 5     Yassine for arraignment.  A 12-CR-103, Defendant 2, U.S.A. vs.
 6     Edgar Orsini for arraignment and detention hearing.  And that
 7     will be it.
 8                  MR. SOFER:  Gregg Sofer for the United States.  I
 9     thought we were also calling Mr. Faiq.
10                  THE CLERK:  Yes.  I'm sorry.
11                  A 12-CR-104, Defendant 3, U.S.A. vs. Karim Faiq for
12     arraignment and detention hearing.
13                  MR. FLOREY:  And Ben Florey for Mr. Faiq.
14                  THE COURT:  Both sides ready to proceed?
15                  MR. SOFER:  Yes, your Honor.
16                  THE COURT:  Go ahead.
17                  MR. SOFER:  I don't know what order you wanted to go
18     in.  I think the first matter, Mr. Yassine, I believe was going
19     to -- he has an arraignment that he may or may not waive.
20                  THE COURT:  I think, Mr. Florey.
21                  MR. FLOREY:  Your Honor, I have another engagement
22     downstairs on a deposition that you ordered.
23                  THE COURT:  He's got the deposition downstairs, so if
24     you want to take his first.
25                  MR. SOFER:  Yes, sir.  Absolutely.

1           MR. FLOREY:  Is it possible that I might be able to
2    take this up?
3           THE COURT:  Okay.  It will be Mr. Faiq.
4           MR. FLOREY:  Yes, sir.
5           THE COURT:  Faiq.
6           MR. SOFER:  Your Honor, if it's acceptable to your
7    Honor for this detention hearing, if the government would prefer
8    to just proffer this evidence, as opposed to calling any live
9    testimony.
10          THE COURT:  Any objection?
11          MR. FLOREY:  No, sir.  My client and I appeared
12   yesterday.  We heard the testimony.
13          THE COURT:  Okay.  Go ahead.
14          MR. SOFER:  And, your Honor, here, again, where the
15   government is requesting detention.  This defendant is not a
16   United States citizen.  He has the most exposure in the case.
17   He's facing the rest of his life potentially in federal prison.
18   The government believes it has a strong case against him.  He
19   dealt with -- in addition to the cooperating witness, he dealt
20   with an FBI undercover agent in this case.  He does have ties to
21   Honduras.  I believe he's a Moroccan citizen.  For all those
22   reasons, your Honor, the government is requesting detention.
23          THE COURT:  Mr. Florey.
24          MR. FLOREY:  He's a permanent resident here, your
25   Honor, and he has on two occasions or perhaps three, at the most,

1  in the last 13 years left the states, two of which was to go
2  visit relatives in South America.  But he has no other contact
3  with South America other than through his wife.  He has no
4  intention of going anywhere.  There is a substantial amount of
5  exposure on one of the counts, but we're convinced that we're
6  going to be able to handle that and he is convinced of it, as
7  well.
8         His family is here.  His brother Syed Faiq is present
9  with his family.  And I don't -- his wife's here, his children
10 are here, his uncles are here, his brothers are all here, and
11 they will all make sure he stays.  It's a good, tight family.
12 And I can tell the Court, in my opinion, after knowing this guy
13 for, what, about five, six years now, seven years, that I could
14 vouch for his ability and his attitude to be a good one, and he
15 will be back in court whenever you need him here.  That's all I
16 have, Judge.
17         THE COURT:  Okay.  Anything else from the government?
18         MR. SOFER:  No, your Honor.
19         THE COURT:  Okay.  I'm going to follow the Pretrial
20 Services recommendation in this case, alter it to some extent.
21 I'm going to set a $25,000, ten percent bond.  Defendant will be
22 required to appear at all proceedings.  If he's convicted, he'll
23 be required to surrender for service of any sentence imposed, and
24 he's to comply with all of the other conditions, which include
25 submitting to the supervision of Pretrial.

1           I'm going to place you in the Pretrial -- in the
2  third-party custodian custody of your brother Syed Faiq, and I'm
3  going to require him to supervise you and to use every effort to
4  ensure that your brother complies with the conditions and that he
5  makes every appearance in court.  And that, Syed, you are to
6  notify the Court immediately if your brother violates any of
7  these conditions and -- or absconds.
8           Do you understand?  Do you agree to that?
9           MR. S. FAIQ:  Yes, your Honor.
10          THE COURT:  Okay.  You're to surrender any passport
11 that you have to Pretrial.  You're not to obtain any other
12 passport.  You're restricted to Travis County and the five
13 surrounding counties unless you get permission from Pretrial.  No
14 foreign travel will be allowed.  You're to avoid any and all
15 contact with anyone who is a codefendant in this case.  That
16 would include some of your relatives, I believe.  And by no
17 contact, I mean zero contact.  No contact by mail, telephone, or
18 anything else.  If they call you, you just hang up.  If they
19 write you a letter or send you an e-mail, send it to Mr. Florey,
20 he'll know what to do with it.
21          DEFENDANT FAIQ:  Yes, sir.
22          THE COURT:  If you need to contact them in order to
23 prepare your defense, Mr. Florey will do that, not you.
24          DEFENDANT FAIQ:  Yes, your Honor.
25          THE COURT:  You're not to possess a firearm,

1  destructive device, or any other weapon.  You're to use no
2  alcohol.  That's no beer, no wine, no hard liquor.  And you're to
3  -- not to use or unlawfully possess any narcotic drug or any
4  other controlled substance unless it's prescribed by a licensed
5  doctor.  You're to submit to testing for prohibited substance if
6  that's required by Pretrial, and you're not to tamper with those
7  tests or attempt to obstruct those tests.  And you're to pay any
8  or all part of the program.  And a financial disclosure is
9  directed by Pretrial, you'll comply with that.
10            Do you have any questions about that?
11            DEFENDANT FAIQ:  Yes, your Honor.  No.
12            THE COURT:  Can you comply with those conditions?
13            DEFENDANT FAIQ:  Sorry?
14            THE COURT:  Can you comply with those conditions?
15            DEFENDANT FAIQ:  Yes.
16            THE COURT:  All right.  I'm going to require that you
17  sign the bond, your wife sign the bond, and your brother sign the
18  bond.  That way you'll all be co-sureties on the bond.
19            DEFENDANT FAIQ:  Yes, your Honor.
20            THE COURT:  So if you abscond, the United States
21  government will go after not only your brother but your wife, and
22  they can be very persistent, as anybody who's had a student loan
23  knows.
24            And, Mr. Florey, you're substituting in; is that
25  correct?

```
 1                 MR. FLOREY:  Actually, I think I'm -- yes.  I'm set.
 2                 THE COURT:  Okay.  Do you need --
 3                 MR. FLOREY:  I think I've made an appearance, but I'll
 4    take care of the paperwork, as well.
 5                 THE COURT:  Okay.  You make a formal motion that you
 6    are substituting in?
 7                 MR. FLOREY:  Yes.
 8                 THE COURT:  Okay. Good.  Mr. Florey, do you have any
 9    questions about those conditions?
10                 MR. FLOREY:  No, sir.  We don't have any questions.  I
11    think he understands them very clearly.
12                 THE COURT:  All right.  Would you remind him that I
13    expect total compliance with those conditions?
14                 MR. FLOREY:  I will.
15                 THE COURT:  Okay.  Thank you, Mr. Florey.
16                 MR. FLOREY:  May I be excused?
17                 THE COURT:  Yes, sir.  Thank you.
18                 MR. FLOREY:  Thank you, sir.
19                 THE COURT:  And, Mr. Orsini.
20                 MR. SOFER:  Yes, your Honor.
21          With respect to Mr. Orsini, again, the government would
22    request we proceed via proffer, your Honor.
23                 THE COURT:  Any objections, counsel?
24                 MS. SEELIG:  No, your Honor.
25                 THE COURT:  You what?
```

1          MS. SEELIG:  No, your Honor.  There's no objection.
2          THE COURT:  Okay.  That will be granted.
3          MR. SOFER:  Again, here, your Honor, the government's
4    requesting detention.  This is a presumption case.  The defendant
5    has a significant criminal record, including a significant
6    conviction.  He has ties to Mexico.  The Drug Enforcement Agency
7    has been able to confirm numerous crossings into Mexico.  I would
8    point out for the record that the defendant did state here in
9    court, on the first day, that he was hiding vehicles from
10   repossession from a bank.  I think that's an indication of his
11   reliability and likelihood to return to court.  He is facing a
12   significant sentence in this case.
13         The government's case is strong.  We've been able to
14   locate his phone through cellular site records at the scene of
15   the drug transaction in which a kilo of cocaine was exchanged.
16   And I would note, also, that the Pretrial Services has
17   recommended that there are no conditions that would return --
18   that would assure his return to court and that he's a danger to
19   the community; and therefore, the government requests detention,
20   your Honor.
21         THE COURT:  Ms. Seelig, and you have been retained; is
22   that correct?
23         MS. SEELIG:  Yes, your Honor.
24         THE COURT:  Okay.
25         MS. SEELIG:  From the evidence, your Honor, that we

1  heard yesterday, there is very limited action taken by Mr. Orsini
2  that has been brought forth to this court.  Although he does have
3  priors, his priors, two of them were DWIs.  Many people in Travis
4  County here have DWI convictions.  One of them was a possession
5  case back in 2001.  Mr. Orsini complied with his sentence and was
6  released successfully.  With respect to any kind of substance
7  abuse, it is because of the DWIs that the government has alleged
8  substance abuse problem.
9         Mr. Orsini is almost a lifelong resident of Austin,
10 Texas.  He will not be leaving.  He has a wife here of seven
11 years, a five-year-old daughter, three sons here in Austin, one
12 in San Marcos -- I'm sorry, one of them in Harlingen with his
13 ex-wife whom he has a very good relationship with still.  He has
14 his entire what -- he is a orphan child, so he does not have
15 family from his end.  But from his wife's end, she has brought
16 forth her family.  His older son is sitting in the courtroom, as
17 well as his church family.
18        Within the last three years, Mr. Orsini has started to
19 change his life around.  As we heard yesterday, this incident
20 occurred back in 2008.  Since then, Mr. Orsini has been working
21 with a church and has even -- is the star of a production in a
22 church film about changing their lives and turning them around,
23 and that's what he's doing now.
24        With respect to the vehicles and the comment that was
25 made on Thursday, two of those cars are used.  The two cars that

1  are usable will be kept in order to continue using them for work
2  purposes.  He is a -- he's not a limousine driver, his son is,
3  that is their business.  He didn't want to lose the access to
4  those vehicles, and that's why he said what he said on Thursday.
5  He apologizes for the way it came out to the Court.  He wasn't
6  trying to hide anything, he just did not want to lose those cars
7  and since then, has made -- he's made -- well, the family has
8  made arrangements with the banks in order to make sure that those
9  cars aren't repossessed, and they can maintain the income and in
10 order to pay me, and that he will be here in court.
11         All the family is here.  Everybody's willing to support
12 his return.  He has no reason to go back to Mexico.  He has no
13 passport; it is expired.  However, we will deliver that to
14 officials if they want the expired passport.  I have it in my
15 possession already.  And Mr. Orsini has no intentions of going
16 back to Mexico.  He has been there because of a grandmother and a
17 brother but that he does not keep in contact with.  And,
18 therefore, we ask, Judge, to -- we respectfully ask the Judge to
19 release him on bond.
20         THE COURT:  Anything else from the government?
21         MR. SOFER:  No, your Honor.
22         THE COURT:  Based on the testimony from yesterday and
23 argument of counsel today, the information contained in the
24 Pretrial Services report, I'm going to grant the government's
25 request for detention in this case.  I'll enter an order to that

1  effect later this afternoon.  That can be appealed subject to
2  Title 18, 3145(b).
3           At this time, Mr. Orsini, I'm going to remand you back
4  to the custody of the United States marshals.  They'll hold you
5  without bond pending the appeal of the order or the resolution of
6  the case.  Do you understand?
7           DEFENDANT ORSINI:  Yes, sir.
8           THE COURT:  Okay.  Thank you.  If you'll go with the
9  marshals.
10          MS. SEELIG:  May I be excused, your Honor?
11          THE COURT:  Yes, ma'am.  Thank you.
12          Who's next?  Which one?  Okay.  Go ahead.
13          MR. ORR:  Thank you, your Honor.
14          Steve Orr for Mohammed Ali Yassine, your Honor.  I'm
15 still not retained.  I anticipate being retained in the very near
16 future.  And so, what I'm requesting is that the arraignment be
17 put off until sometime next week and I can -- we can deal with
18 that then.  But I would like to urge at this point
19 reconsideration on the bond for what I did appear on.
20          And I didn't make it clear to your Honor yesterday,
21 but, you know, he's got a house and a rent house and he owes --
22 and the Maserati's a lease; he doesn't own that.  But he owns, I
23 think, on the house on Mesa, he owns something in the
24 neighborhood of half a million on that.  And then, the other
25 house is worth -- he owes 100,000 on that.  He doesn't really

1  have the assets everybody thinks he has.  But I would urge your
2  Honor to follow the Pretrial report.
3              THE COURT:  Okay.  Why don't we reset the arraignment
4  for Monday?  It's my understanding Judge Lane may be on board by
5  that time.  So -- or someone.  I know who's not going to be on
6  board at that time.
7              MR. ORR:  Oh, I get it, your Honor.
8              THE COURT:  Monday at 11:00.
9              MR. ORR:  Monday at 11:00.
10             THE COURT:  Does that fit your schedules?
11             MR. ORR:  It will fit my schedule, your Honor.
12             THE COURT:  Okay.
13             MR. ORR:  I'll make it fit.
14             THE COURT:  All right.  Concerning the bond, I'll deny
15 that at this time.  You could take that back up if you want.
16             MR. ORR:  I'll do a reconsideration again and with more
17 information.  I'll file something in writing.
18             THE COURT:  All right.  Thank you.
19             MR. ORR:  Thank you, your Honor.
20             THE COURT:  What else we got now?  Okay.  We'll take a
21 break.
22             (Proceedings conclude at 1:36 p.m.)
23
24
25

```
 1
 2
 3
 4
 5
 6                    REPORTER'S CERTIFICATE
 7
 8     I, LILY I. REZNIK, DO HEREBY CERTIFY THAT THE FOREGOING WAS
 9  TRANSCRIBED FROM AN ELECTRONIC RECORDING MADE AT THE TIME OF THE
10  AFORESAID PROCEEDINGS AND IS A CORRECT TRANSCRIPT, TO THE BEST OF
11  MY ABILITY, MADE FROM THE PROCEEDINGS IN THE ABOVE-ENTITLED
12  MATTER, AND THAT THE TRANSCRIPT FEES AND FORMAT COMPLY WITH THOSE
13  PRESCRIBED BY THE COURT AND JUDICIAL CONFERENCE OF THE UNITED
14  STATES.
15
16  /s/Lily I. Reznik                       April 6, 2012
17  LILY I. REZNIK                          DATE
18
19
20
21
22
23
24
25
```

*LILY I. REZNIK, OFFICIAL COURT REPORTER*
*U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)*